IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JEFFREY MICHAEL WALDEN, § | |
| Plaintiff, § | |
| § | |
| § | |
| v. § | No.  EP-16-CV-00011-ATB |
| § | |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of the § | |
| Social Security Administration, § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") terminating his disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

### I.  PROCEDURAL HISTORY

On October 16, 2006, Plaintiff applied for DIB and SSI, alleging a disability onset date of May 1, 2006.  (R. 197, 202).  After a hearing, the Administrative Law Judge ("ALJ") found on October 24, 2008, that Plaintiff was disabled as of May 1, 2006.  (R. 99-109).  The ALJ noted

that Plaintiff's condition was expected to improve and ordered a continuing disability review within twenty-four (24) months. (R. 109).

On June 9, 2011, the regional commissioner found that, as of June 1, 2011, Plaintiff had experienced medical improvement, and was no longer disabled within the meaning of the Social Security Act. (R. 115-117). Upon reconsideration, the Disability Hearing Officer again denied benefits. (R. 136-144). Plaintiff then filed a request for a hearing, which was held on June 18, 2014. (R. 76). On August 25, 2014, the ALJ issued a decision finding that Plaintiff's disability had ended as of June 1, 2011. (R. 50-65). On November 19, 2015, the Appeals Council denied review. (R. 1-6).

## II.   ISSUE

Plaintiff presents the following issue for review:

> 1. Whether the ALJ erred in finding that Plaintiff experienced medical improvement related to his ability to work as of June 1, 2011, and was no longer disabled as of that date. (Pl.'s Br. 3, ECF No. 19).

Plaintiff contends that the ALJ's determination that Plaintiff experienced medical improvement is not supported by substantial evidence because the evidence is insufficient to establish medical improvement. (*Id*. at 3-6). Specifically, Plaintiff argues that the ALJ improperly relied on the non-medical opinion of the Disability Hearing Officer and improperly interposed her own opinion over that of treating physicians. (*Id*.) Plaintiff therefore contends that the Commissioner failed to meet her burden of establishing that Plaintiff is no longer disabled. (*Id*. at 6).

## III.     DISCUSSION

### A.     Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citation omitted). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* (citation omitted). A finding of "no substantial evidence" will be made "only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

### B.     Evaluation Process

Cessation of benefits is appropriate if a claimant has undergone medical improvement related to the ability to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [claimant was] disabled . . . ." 20 C.F.R. § 404.1594(b)(1). In proceedings to terminate disability benefits due

to medical improvement, the burden of proof lies with the Commissioner to establish that Plaintiff is no longer disabled. *See Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991) (per curiam). Termination proceedings are governed by the following eight-step process:

(1) Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.)

(2) If not, does the claimant have an impairment [or] combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, the disability is continuing.)

(3) If not, has there been medical improvement?

(4) If there has been medical improvement, is it related to the claimant's ability to do work?

(5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing.)

(6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended.)

(7) If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.)

(8) If not, is the claimant able to perform other substantial gainful activity?

*Id.* at 944 n.1 (citing 20 C.F.R. § 404.1594(f)).

In the present case, the ALJ found that Plaintiff's most recent favorable decision was October 24, 2008, which is known as the "comparison point decision" ("CPD").[1] (R. 54). At the time of the CPD, Plaintiff suffered from the following medically determinable impairments: depressed mood, anxiety, lumbar degenerative joint disease, asthma, migraines, and ankle

---

[1] The CPD is the date of the most recent favorable medical determination. 20 C.F.R. § 404.1594(b)(7). The Plaintiff's condition at the time of the CPD is compared with his present condition for the purposes of determining medical improvement. 20 C.F.R. § 404.1594(b)(1).

tendonitis. (R. 55). These impairments resulted in a residual functional capacity ("RFC") that Plaintiff lacked the ability to perform sustained work at all exertional levels. (R. 55).

Applying the eight step sequential evaluation for termination proceedings, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity from the CPD through June 1, 2011. (R. 55).

At step two, the ALJ found that from the CPD until June 1, 2011, Plaintiff did not develop any additional impairments. (R. 55). Further, the ALJ found that, since June 1, 2011, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (R. 55). In doing so, the ALJ determined that Plaintiff's impairments did not meet the criteria of: listing 1.02 (major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 3.03 (asthma), listing 3.02 (chronic pulmonary insufficiency), and did not meet the neurological system criteria in Section 11.00 Appendix 1. (R. 55).

At step three, the ALJ found that, as of June 1, 2011, Plaintiff experienced medical improvement. (R. 57-59). After reviewing the medical evidence, the ALJ determined that Plaintiff now had the RFC to perform medium work, with the following limitations:

> he cannot climb ladders, ropes, or scaffolds; should avoid even moderate exposure to extreme heat, environmental irritants such as fumes, dusts, odors, gases, and poorly ventilated areas; and should avoid even moderate exposure to moving machinery and unprotected heights. He can understand, remember, and execute simple instructions and tasks in a work environment that is primarily object focused. He can maintain concentration, persistence, and pace for two hours at a time, which includes the ability to work an additional period of two hours at a time before and after regularly scheduled breaks in the morning, lunch, and in the afternoon. He should have only occasional interaction with public and co-workers.

(R 59).

At step four, the ALJ then found that Plaintiff's medical improvement was related to his ability to work because it resulted in an increased RFC.[2] (R. 63).

At step six, the ALJ found that, as of June 1, 2011, Plaintiff's impairments were severe. (R. 63). At step seven, the ALJ found that, since June 1, 2011, Plaintiff was unable to perform his past relevant work. (R. 63). However, at step eight, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was able to perform work that exists in significant numbers in the economy. (R. 63-64). These jobs included: laundry laborer (DOT 361.684-018), janitor (DOT 389.683-010), and hand packager (DOT 920.587-018). (R. 64).

Consequently, the ALJ found that Plaintiff was no longer disabled as of June 1, 2011. (R. 64-65).

**C.    Analysis**

   **1.    Legal Standard**

To determine when the disability ends (when the closed period occurs), the ALJ must apply the medical improvement standard.[3] *Teague*, 342 F. App'x at 963 (*citing Waters v. Barnhart*, 276 F.3d 716, 718-719, (5th Cir. 2002) (adopting the "medical improvement" standard of the 3rd, 7th, 10th, and 11th Circuit Courts of Appeal). Under the medical improvement standard, the Commissioner bears the burden of establishing that the claimant is no longer disabled as of the closed date. *Waters*, 276 F.3d at 718 (citing 42 U.S.C. §423(f)); *see also Joseph v. Astrue*, 231 F. App'x. 327, 329 (5th Cir. 2007) (unpublished), *cert. den.*, 552 U.S. 1111 (2008).

---

[2]    Because the ALJ found that Plaintiff experienced medical improvement, step five is inapplicable. *See generally, Griego*, 940 F.2d at 944 n.1.

[3]    Both parties agree the medical improvement standard is applicable. (Pl.'s Br. 4, ECF No. 19); (Def.'s Br. 4, ECF No. 22).

In meeting this burden, "[a] finding that there has been a decrease in medical severity must be based on a change in the symptoms, signs, or laboratory findings associated with the impairment." *Gardner v. Astrue*, 2011 U.S. Dist. LEXIS 66282, *11-12 (N.D. Tex. Apr. 19, 2011) (citing 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i)).

Consequently, under the medical improvement standard, benefits may be terminated if the ALJ finds: (1) that there has been a medical improvement related to the ability to work; and (2) that the beneficiary can engage in substantial gainful activity. 42 U.S.C. § 423 (f)(1)(A)-(B). "Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to do basic work activities." *Teague*, 342 F. App'x at 964 (citing 20 C.F.R. § 404.1594(b)(3)).

In making this determination, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) present at the time of the most favorable medical decision finding the claimant disabled. *See* 20 C.F.R. § 404.1594(b)(7). Then, in order to determine that medical improvement is related to the ability to work, the ALJ must reassess a claimant's RFC based on the current severity of the impairment(s). *See* 20 C.F.R. at § 404.1594(c)(2). The ALJ must then compare the new RFC with the RFC from Plaintiff's last favorable disability finding. *Id*.

### 2. Analysis

Plaintiff contends that the ALJ's determination that Plaintiff experienced medical improvement is not supported by substantial evidence because the evidence is insufficient to establish medical improvement. (Pl.'s Br. 3-6, ECF No. 19). Specifically, Plaintiff argues that: (1) the evidence is insufficient to establish medical improvement; (2) the ALJ improperly relied on the non-medical opinion of the Disability Hearing Officer; and (3) the ALJ improperly

interposed her own opinion over that of treating physicians.[4] (*Id.*) Plaintiff, therefore, contends that the Commissioner failed to meet her burden of establishing Plaintiff is no longer disabled. (*Id.* at 6).

The Commissioner responds by arguing that substantial evidence supports the ALJ's determination that Plaintiff experienced medical improvement. (Def.'s Br. 4-11, ECF No. 22). Specifically, the Commissioner argues that Plaintiff's mental conditions have improved as: (1) he has not suffered any hospitalizations since July 2006; (2) clinicians have consistently raised Plaintiff's global assessment function ("GAF") score from 50 to between 60 and 75; (3) Plaintiff noted in October 2013 that his mood was improved, he suffered no recent panic attacks, his medication regimen was working, he was sleeping better, and his depression and anxiety were controlled; and (4) Plaintiff reported in January 2014 that his mood was "alright, I suppose" and reported decreased anxiety and depression. (*Id.* at 5-6). Further, the Commissioner argues that Plaintiff failed to attend a December 2013 doctor's appointment, which suggests that his condition was less severe than alleged. (*Id.* at 6). Lastly, the Commissioner notes that, although Plaintiff reported an inability to "be in public," he spent two months in California caring for his father and two months in Hong Kong. (*Id.* at 7).

Regarding Plaintiff's physical impairments, the Commissioner argues that Plaintiff has experienced medical improvement as of June 1, 2011. (*Id.* at 7-10). Specifically the Commissioner notes: (1) that prior to June 2011, Plaintiff would often rate his pain at a level of zero of ten on the Comparative Pain Scale;[5] (2) that Dr. Jose A. Barahona opined that Plaintiff

---

[4] Beyond claiming that the ALJ "improperly interposed her own opinion" over treating physicians, Plaintiff points to no specific area where the ALJ allegedly committed this error.

[5] The Comparative Pain Scale ranges from a zero to ten, with zero constituting "no pain" and a ten representing "unimaginable [and] unspeakable pain." Stanford, *Comparative Pain Scale* (last updated, Dec. 2008), available at: https://lane.stanford.edu/portals/cvicu/HCP_Neuro_Tab_4/0-10_Pain_Scale.pdf.

could walk for two blocks and sit or stand for 30 minutes without difficulty; (3) that Dr. Barahona indicated that Plaintiff was magnifying his symptoms; (4) that reports, dated March 23, 2011 and April 15, 2013, indicate that Plaintiff walked without assistance and had a normal gait; (5) that Plaintiff stated in a February 19, 2011 symptom report that he was able to walk "about an hour" before needing to stop; and (6) that the Disability Hearing Officer observed Plaintiff had a normal gait, had no difficulty getting out of his chair, carried a backpack without difficulty, sat in a chair for one hour without signs of pain, and did not appear nervous, anxious, or depressed. (*Id*. at 6-8). Furthermore, the Commissioner notes that Plaintiff's treatment for his physical conditions have been "conservative, infrequent, and minimal." (*Id*. at 8). Similarly, in Plaintiff's August 2011 magnetic resonance imaging ("MRI") scan, Dr. Gary E. Reister indicated a mild to moderate degenerative disc disease, with a central protrusion that did not produce "significant visualized neural compromise." (*Id*. at 9). Dr. Reister found that the disc protrusion did not produce significant compression of the thecal sac or the traversing S1 nerve roots. (*Id*.).

Regarding Plaintiff's migraines, the Commissioner argues that Plaintiff could not remember his last migraine as of May 2011. (*Id*.). Moreover, after June 2011, Plaintiff reported migraines occurring only once or twice a month and that they disappeared on their own. (*Id*. at 10). Lastly, although reporting a migraine at the hearing, the ALJ observed that Plaintiff responded and participated appropriately. (*Id*.).

A review of the record evidence indicates that there is substantial evidence to support the ALJ's decision that Plaintiff experienced medical improvement related to his ability to work.

---

"The practice of measuring pain on a scale of 0 to 10 . . . is widely used by physicians." *Smith v. Hunt*, 707 F.3d 803, 814 (7th Cir. 2013) (citations omitted).

### a.     Plaintiff's Physical Impairments

The Court finds that substantial evidence supports the Commissioner's finding that Plaintiff has undergone medical improvement with respect to his physical impairments.

On November 2, 2006, Plaintiff reported that, due to his back and ankle pain, he was only able to walk for no more than a "short time." (R. 322). On January 3, 2007, Dr. Jose Barahona noted that Plaintiff was only able to walk 2 blocks and sit/stand for thirty minutes before needing to rest. (R. 1253). Dr. Barahona also noted Plaintiff was able to bend, squat, and walk on his heels and toes without difficulty. (R. 1255). Additionally, on April 2, 2007, Plaintiff categorized his back and ankle pain as "severe." (R. 339).

Subsequently, on February 19, 2011, Plaintiff noted he was able to walk for approximately one hour before needing to rest. (R. 240). Further, on March 23, 2011, Dr. Mauricio Jimenez noted that Plaintiff's gait was normal and that Plaintiff was able to walk on his heels and tiptoes without difficulty. (R. 387). On August 29, 2012, the Disability Hearing Officer noted that Plaintiff had a normal gait, had no difficulty getting out of his chair, carried a backpack without difficulty, and sat in a chair for one hour without signs of pain.[6,7] (R. 133).

---

[6]     Although neither party has addressed the issue, it is unclear whether an ALJ may rely on evidence after the closed date in determining whether the Plaintiff "medically improved" as of the closed date. Most courts have admitted medical evidence after the closed date without comment. *See Gardner v. Astrue*, 2011 U.S. Dist. LEXIS 66282, at *13-17 (N.D. Tex. Apr. 19, 2011) (considering evidence after the closed date in determining whether Plaintiff was not disabled as of the closed date), *adopted by* 2011 U.S. Dist. LEXIS 64416); *Valdez v. Colvin*, 2013 U.S. Dist. LEXIS 172534, *26, 29-30 (W.D. Tex. Dec. 6, 2013) (same); *Newbold v. Astrue*, 2012 U.S. Dist. LEXIS 32640, *8-9 (D. Utah Mar. 9, 2012) (same); *Keen v. Astrue*, 2009 U.S. Dist. LEXIS 22416, *20 (W.D. Va. Mar. 12, 2009) (same); *Pagan v. Barnhart*, 409 F. Supp. 2d 217, 222 (W.D.N.Y. 2006) (same); *but see Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. Okla. 1999) (reversing the denial of benefits as the ALJ relied on evidence solely after the closed date in determining medical improvement as of the closed date). Moreover, both parties have relied on evidence after the closed date without objection. As such, any objection is waived and the Court will consider evidence of Plaintiff's medical improvement after the closed date.

[7]     Plaintiff claims the ALJ improperly relied on the Disability Hearing Officer's "medical opinion." However, the ALJ was permitted to rely on non-medical observations regarding how an impairment affects the individual or the level of severity of the impairment. SSR 06-03p. Here, the Disability Officer

Therefore, the Court finds that Dr. Jimenez's opinion and the Disability Hearing Officer's observations provide substantial evidence to support the ALJ's decision that Plaintiff experienced medical improvement with respect to his ability to ambulate.

With respect to the objective medical evidence, an MRI of Plaintiff's back dated August 25, 2011, revealed only mild deformity at the anterospuerior margin of L3 and L4, with minimal compression. (R. 746). Similarly, the MRI indicates that the degenerative disc disease at L5-S1 did not produce significant neural compromise. (R. 746). Regarding Plaintiff's ankle, an August 25, 2011 MRI revealed only an impingement, no significant abnormalities, and no evidence of fracture or dislocation. (R. 748-749). Therefore, the Court finds that the August 25, 2011 MRI provides substantial evidence to support the ALJ's finding that Plaintiff experienced medical improvement with respect to his back and ankle impairments.

Additionally, between August 2009 and July 2011, the medical records indicate that Plaintiff would often rate his pain level a zero out of ten on the Comparative Pain Scale and that Plaintiff also failed to note back and ankle pain. (R. 633, 767, 768, 769, 771, 773). Only once did Plaintiff rate his pain at a level of six and twice at a level of two. (R. 772, 774-75). As such, the Court finds that Plaintiff's self-reported lack of pain provides substantial evidence to support the ALJ's finding that Plaintiff experienced medical improvement.

Moreover, the ALJ notes that Plaintiff's treatment for his physical impairments has been "conservative, infrequent, and minimal" and that Plaintiff failed to seek any treatment for his ankle. (R. 58). The Court agrees with the ALJ that, given the alleged severity of Plaintiff's back and ankle pain, the record reflects minimal and conservative treatments with regard to these ailments. Indeed, "failure to seek treatment . . . is an indication of nondisability." *Doss v.*

---

only offered her first-hand observations regarding Plaintiff's ability to ambulate. (R. 133). As such, the Court finds that this is not a medical opinion and that the ALJ was permitted to rely on the Disability Officer's observations regarding the severity of Plaintiff's impairments.

*Barnhart*, 137 F. App'x. 689, 690 (5th Cir. Tex. 2005) (unpublished) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)).

Regarding Plaintiff's migraines prior to his 2008 disability hearing, Plaintiff described his migraines as "severe." (R. 299). However, on May 18, 2011, the medical records indicate that Plaintiff could not recall the last incident of a migraine. (R. 391). On November 29, 2011, Plaintiff reported that his migraines only occurred once or twice a month. (R. 619). Notably, Plaintiff indicated that these migraines went away on their own. (R. 619). Consistent with Plaintiff's infrequent migraines, Plaintiff rarely complained of migraines to clinicians. (R. 60). Moreover, the ALJ noted that despite having a low grade migraine during the hearing, Plaintiff was able to remain polite and composed, and had no difficulty interacting during the hearing. (R. 58, 61, 88-89). Therefore, the Court finds that Plaintiff's minimal reporting of migraines and the ALJ's observations provide substantial evidence to support the ALJ's finding that Plaintiff experienced medical improvement with respect to his migraines.

As such, the Court finds substantial evidence supports the ALJ's decision that Plaintiff has experienced medical improvement, as: (1) Plaintiff has self-reported improvement; (2) Dr. Jimenez's noted that Plaintiff's gait was normal, and that Plaintiff was able to walk on his heels and tiptoes without difficulty; (3) the Disability Hearing Officer noted that Plaintiff had a normal gait, had no difficulty getting out of his chair, carried a backpack without difficulty, and sat in a chair for one hour without signs of pain; (4) Plaintiff's August 25, 2011 MRI revealed only an impingement and no significant abnormalities; (5) Plaintiff underwent "conservative, infrequent, and minimal" treatment for his ankle; and (6) Plaintiff often rated his physical pain as a "zero." Accordingly, the Court finds that there is substantial evidence to support the Commissioner's decision that Plaintiff has undergone medical improvement with respect to Plaintiff's physical

impairments. Moreover, because these medical improvements resulted in an increase in Plaintiff's RFC, they are related to Plaintiff's ability to work.[8] *See Teague*, 342 F. App'x. at 964 (citing 20 C.F.R. § 404.1594(b)(3)). Therefore, the Court finds that the Commissioner has met her burden of establishing Plaintiff's medical improvement with respect to Plaintiff's physical impairments as of June 1, 2011.

### b. Plaintiff's Mental Impairments

Substantial evidence likewise supports the Commissioner's finding that Plaintiff has undergone medical improvement with respect to his mental impairments.

In November 2006, during Plaintiff's disability period, Plaintiff was hospitalized with back issues, migraines, asthma, depression, and anxiety. (R. 107). During this hospitalization, Plaintiff was diagnosed as having a GAF score of 50. (R. 107). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* ("DSM"), 34 (4th ed. text rev. 2000). In rendering Plaintiff's favorable 2008 decision, ALJ Mary Ann Lunderman appears to have principally relied on Plaintiff's mental impairments in finding Plaintiff disabled, however, she also noted that "[m]edical improvement is expected with appropriate treatment." (R. 74, 107, 109).

On January 3, 2008, Dr. Talin Dadoyan noted that Plaintiff was in "no acute distress," and that his mood was "better."[9] (R. 698). After examining Plaintiff, Dr. Dadoyan assigned

---

[8] The Court notes that Plaintiff has not contested the ALJ's RFC determination.

[9] Contrary to Plaintiff's assertion that the ALJ relied on "generic statements" in follow-up reports that Plaintiff was doing "well" or "better," Plaintiff's assessments contain much more. (Pl.'s Br. 5, ECF No. 19) (citing *Joseph v. Astrue*, 231 F. App'x. 327, 330 (5th Cir. Tex. 2007) (unpublished)). For instance, Dr. Dadoyan's assessment, *inter alia*, includes the objective determinations: (1) that Plaintiff's

Plaintiff a GAF score of 70. (*Id.*) On December 12, 2011, clinical psychologist Lisa Ortiz opined that Plaintiff had an estimated GAF score of 65. (R. 614). Similarly, on January 25, 2013, Licensed Social Worker Anaiss Munoz opined that Plaintiff had a GAF score of 65. (R. 590). Lastly, on March 1, 2013, psychiatric-mental health nurse practitioner Rosa Vargas opined Plaintiff had a GAF score of 75. (R. 580).

Significantly, a diagnosis of a GAF score between 61-70 represents "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, [with] some meaningful interpersonal relationships." DSM, *supra*, at 34. Likewise, a diagnosis of a GAF score between 71-80 represents "symptoms . . . [that] are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument) [and cause] no more than slight impairment in social, occupational or school functioning (e.g., temporarily failing [sic] behind in schoolwork)." *Id*. Courts have held that a GAF score of 70 does not preclude all work. *Moses v. United States Comm'r of the SSA*, 2014 U.S. Dist. LEXIS 93400, *23 (W.D. La. May 2, 2014); *see also Castillo v. Colvin*, 2014 U.S. Dist. LEXIS 28489, *33 (S.D. Tex. Mar. 5, 2014) (upholding the denial of benefits for a Claimant with a GAF score between 60 and 80).

Further, on October 18, 2013, Plaintiff described his mood as "greatly improved" and noted no recent incidents of panic attacks. (R. 534). Days later, on October 22, 2013, Plaintiff stated that his medication regimen was "working for him" and that his depression and anxiety

---

sleep has improved; (2) that Plaintiff lacked the intent to engage in self-harm; (3) that Plaintiff was in "no acute distress;" (4) that Plaintiff was not agitated; (5) that Plaintiff maintained good eye contact and speech; (6) that Plaintiff had no psychomotor agitation; and (7) that Plaintiff's GAF score had improved to a score of 70. (R. 698). Given Plaintiff's previous diagnosis, the Court finds that these assessments are objective medical evidence indicating improvement. Indeed, the case relied on by Plaintiff held that follow-up reports that "depart" from previous assessments may indicate improvement. *Joseph*, 231 F. App'x. at 330-31.

were controlled. (R. 532). Again, on January 28, 2014, that Plaintiff reported decreased symptoms of depression and anxiety and also described the holiday season, which had previously exacerbated his depression and anxiety, as "mellow." (R. 529). An impairment that is reasonably controlled with medication or therapy cannot serve as the basis of a disability finding. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987)).

Finally, on December 18, 2013, Plaintiff failed to attend his appointment with his social worker. (R. 531). The ALJ noted that this demonstrates Plaintiff's mental symptoms were less severe than alleged. (R. 58). Indeed, as noted above, the failure to seek or follow through with treatment suggests that the disability is less severe than alleged. *See Doss*, 137 F. App'x. at 690.

Based on the foregoing, including Plaintiff's mental symptom improvement, Plaintiff's self-reported improvement, and Plaintiff's control of his mental impairments with medication, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff experienced medical improvement with respect to his mental impairments. On July 18, 2006, the Department of Veteran Affairs noted that Plaintiff's depression had a "likelihood of improvement." (R. 813). Similarly, in Plaintiff's 2008 disability finding, the ALJ stressed that, "[m]edical improvement is expected with appropriate treatment." (R. 109). In fact, all the clinicians who have examined Plaintiff since his disability date have indicated improvement as many of Plaintiff's objective symptoms have improved and Plaintiff's GAF score had increased between 10 to 25 points. Likewise, Plaintiff self-reported improvement with respect to his mental impairments and noted that his mental impairments are reasonably controlled with medication.

As such, the Court finds that there is substantial evidence to support the Commissioner's finding that Plaintiff has undergone medical improvement with respect to his mental

impairments. Because these medical improvements resulted in an increase in Plaintiff's RFC, they are related to Plaintiff's ability to work.[10] *See Teague*, 342 F. App'x. at 964 (citing 20 C.F.R. § 404.1594(b)(3)). Therefore, the Court finds that the Commissioner has met her burden of establishing medical improvement with respect to Plaintiff's mental impairments as of June 1, 2011.

## IV.   CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 3rd day of January, 2017.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] The Court notes that Plaintiff has not contested the ALJ's RFC determination.